IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 15-cv-00879-JLK

MARY ANGEL HINOJOSA, individually and as personal representative for the
ESTATE OF MATTHEW MELINA,

      Plaintiffs,

v.

LT. ALAN FUSTINI,
LT. BENZONA,
LT. GEOFF RICHARDS,
CASE MANAGER THOMAS,
CASE MANAGER SALAZAR,
CASE MANAGER GONZALES, and
CORRECTIONS CORPORATION OF AMERICA,

      Defendants.

## OPINION AND ORDER ON MOTIONS TO DISMISS

**Kane, J.**

### Introduction

Plaintiffs are the mother and the estate of Matthew Melina, a Colorado Department of Corrections inmate murdered by his cellmate on April 24, 2013. Plaintiffs bring a § 1983 claim for violation of the Eighth Amendment against three lieutenants at Arrowhead Correctional Facility (ACF) and three case managers at Bent County Correctional Facility (BCCF), and a claim for wrongful death under C.R.S. § 13-21-202 against the Corrections Corporation of America, which owns and operates BCCF under contract with the Colorado DOC. The Colorado DOC lieutenants

1

and the CCA defendants have separately moved to dismiss. Docs. 7 & 14. For the reasons that follow, both motions are **GRANTED**.

## Background

Plaintiff Mary Angel Hinojosa is the mother of Matthew Melina, a mentally ill inmate held by the Colorado Department of Corrections who was murdered by his cellmate on April 24, 2013. Doc. 1 at ¶ 3. Melina was originally held in the San Carlos Correctional Facility (SCCF), which is able to treat and care for mentally ill inmates. *Id.* at ¶ 6. However, some time before December 2012, Melina was transferred to the Arrowhead Correctional Facility (ACF) at the Canon Minimum Centers. *Id.* While at ACF, Melina was assaulted by another inmate and "socked him back" in self-defense. *Id.* at ¶ 7. On or about December 21, 2012, a hearing was held at ACF to investigate the assault. *Id.* Defendant Lieutenant Bezona investigated the altercation and charged Melina with a Code of Penal Discipline violation. *Id.* Defendant Lieutenant Fustini served as the hearing officer. *Id.* At the hearing, Lieutenant Fustini stated that "it is obvious . . . that [Melina] may have some difficulty processing information and may benefit from a mental health evaluation to determine whether he could mentally function in this environment or can be responsible for his actions in the incident." *Id.* Defendant Lieutenant Richards signed off on this determination, as well as the determination finding Melina guilty of the penal code violation. *Id.* After the hearing, Melina was returned to general population at ACF and subsequently transferred to Bent County Correctional Facility (BCCF). *Id.* BCCF is a private prison operated by Defendant Corrections Corporation of America (CCA) pursuant to a contract with the Colorado DOC. *Id.* at ¶ 6.

While at BCCF, Melina "continued to be assaulted by other inmates." Doc. 1 at ¶ 8. On January 15, 2013, Ms. Hinojosa called BCCF and spoke with Defendant Thomas, a CCA

employee and Melina's case manager. *Id.* Ms. Hinojosa explained that her son was disabled and he needed to be moved to a safer facility where he would not be assaulted. *Id.* Thomas agreed to "look into it," but Ms. Hinojosa never heard back from her. *Id.* From February 4-8, 2013, Ms. Hinojosa tried to reach Thomas by phone with no success. *Id.* On February 12, 2013, Defendant Salazar called Ms. Hinojosa and said she was Melina's new case manager. *Id.* Ms. Hinojosa "repeated her concerns that her son was unsafe from assaults from other inmates because of his mental disability and he needed to be transferred to a facility where he could be treated for his mental illness and kept safe from assaults." *Id.* Defendant Salazar responded that Melina was going to be paroled. *Id.* On February 22, 2013, Ms. Hinojosa left Salazar a message. *Id.* Defendant Gonzales returned her call and said she was Melina's new case manager and that because of Melina's "write-ups" his parole was rescinded. *Id.* Ms. Hinojosa repeated her safety concerns to Gonzales. *Id.* She called Gonzales again on April 4, 2013 to ask why her son was not being kept safe from assaults and when he was going to be transferred to SCCF for his safety. *Id.* Gonzales informed Ms. Hinojosa that Melina's parole board hearing had been rescheduled for May 2013. *Id.*

Sometime after Plaintiff spoke with Gonzalez on April 4, Melina was transferred to the Colorado Territorial Facility (CTCF), operated by the Colorado DOC. *Id.* Melina was assigned to a cell with inmate Isaac Aceves, who was violent and mentally ill. *Id.* On April 24, 2013, Aceves tortured and murdered Melina. *Id.*

## Analysis

### 1.     Statute of Limitations

Claims brought under 42 U.S.C. § 1983 are governed by the two-year statute of limitations contained in C.R.S. § 130-80-102. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). While

state law determines the limitations period applicable to a § 1983 claim, federal law determines when the cause of action accrued. *Baker v. Board of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). Under federal law, the claims accrue and the two-year statute of limitations begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id.* In other words, the statute of limitations begins to run once "the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997).

Defendants argue that the claims accrued at the conclusion of the COPD hearing in December of 2012, when Defendants "ignored the danger to Mr. Melina" and allowed him to be returned to the general population and transferred to the CTCF, or on April 4, 2013, when Melina was transferred out of the BCCF operated by CCA. Doc. 14 at 4-5; Doc. 7 at 12-13. Plaintiffs argue that their § 1983 claim did not accrue until Mr. Melina's death on April 23, 2013, and is therefore timely. Doc. 19 at 11-12.

I find that Plaintiffs' § 1983 is not barred by the statute of limitations. Plaintiffs' Eighth Amendment claim alleges that "Mr. Melina was repeatedly exposed to unreasonable risks of harm by other inmates and was murdered as a result of the deliberate indifference" of the Defendants. Doc. 1 at ¶ 10. I find that the "injury which is the basis of the action" includes Melina's murder and therefore did not accrue until April 23, 2013. *Baker*, 991 F.2d at 632.

### 2. Eighth Amendment Violation

A two-part test governs the determination of whether a prison official violated an inmate's Eighth Amendment rights. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must first produce objective evidence that the deprivation at issue was "sufficiently serious" in that it results "in the denial of the 'minimal civilized measure of life's necessities.'" *Id.* For a claim

based on a failure to prevent harm, the inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*  Second, a plaintiff must show the prison official's "deliberate indifference" to a substantial risk of serious harm. *Id*. Deliberate indifference will be found where the "official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.  The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.  A plaintiff must plead facts showing the clear existence of a danger to him, as well as facts showing that prison officials clearly knew or should have known of the existence of such danger, but nonetheless deliberately or recklessly failed to do anything to alleviate it. *Id*. at 838.  Determining whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including circumstantial evidence or obviousness. *Id.* at 842.

        a.   <u>State Defendants</u>

Lieutenants Fustini, Bezona, and Richards (the "State Defendants") argue that Plaintiffs have failed to satisfy the subjective prong because the only factual allegations regarding their state of mind are that they participated in a disciplinary hearing regarding Melina's alleged assault of another inmate at which Lieutenant Fustini found that Melina "may have some difficulty processing information and may benefit from a mental health evaluation." Doc. 1 at ¶ 7; *see* Doc. 14 at 5-8.  Plaintiffs respond that the risk of harm was obvious and that it need not be established that any specific assault was likely, only an assault in general.  Doc. 19 at 8-10.

I find that Plaintiffs have not alleged that the State Defendants were "aware of facts" showing a substantial risk of serious harm or that they in fact drew that inference.  Plaintiffs have alleged only that Lieutenant Fustini was aware that Mr. Melina "may have some difficulty

processing information and may benefit from a mental health evaluation," Doc. 1 at ¶ 7, and that they knew of the assault by another inmate that was the basis of the COPD hearing. Plaintiffs have not alleged that the State Defendants had any further knowledge of Melina's mental issues, or that they knew that his mental condition placed him at risk of assault. This is not enough, without more, to establish an Eighth Amendment violation on the part of the State Defendants. *See Vinyard v. Evans*, No. 07-10241, 2008 WL 907381, at \*3 (E.D. Mich. Mar. 31, 2008) (finding no deliberate indifference based only on placement in general population instead of psychiatric population); *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011) (finding no deliberate indifference where officer referred inmate for mental health assessment but had no further interaction with inmate).

### b. CAA Defendants

CAA and the CAA case manager Defendants Thomas, Salazar, and Gonzales ("CAA Defendants") argue that Plaintiffs have failed to establish deliberate indifference on their part because Plaintiffs' allegations are conclusory, and because CCA had no authority to transfer Melina or to control where he was being held. Doc. 7 at 7-11. Plaintiffs allege that each of the CAA Defendants was Melina's case manager at some point during early 2013 while he was held at BCCF, and that Plaintiff Hinojosa spoke on the phone with each Defendant during that time period. *See* Doc. 1 at ¶ 8. Plaintiffs allege that Ms. Hinojosa informed each CAA Defendant that her son had a mental disability and was in danger of assault from other inmates because of his disability. *Id*.

I find that Plaintiffs have failed to plead an Eighth Amendment violation. Plaintiffs only assert that Mr. Melina "continued to be assaulted by other inmates" while at BCCF, and that Ms. Hinojosa repeatedly voiced her "concerns that her son was unsafe from assaults from other inmates

because of his mental disability." *Id.* Plaintiffs do not allege any specific incidents of assault, or indicate that the details of any specific assaults were conveyed to the CAA Defendants. These allegations are not specific enough to state a claim for violation of the Eighth Amendment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (pleading Eighth Amendment violation requires more than "conclusory" allegations); *Thomas v. State of Colorado*, No. 12-CV-03078, 2014 WL 656838, at *5 (D. Colo. Feb. 20, 2014) (rejecting Eighth Amendment claim where Plaintiff failed to identify any "actual threats or harm"); *Short v. Trujillo*, No. 08-CV-02209, 2011 WL 4048758, at *5 (D. Colo. Sept. 12, 2011).

In addition, Plaintiffs have not alleged that the CAA Defendants had any authority or ability to transfer Melina, to SCCF or elsewhere, or that they had any knowledge of or control over Melina's transfer to CTCF or his assignment to a cell with Isaac Aceves. *See* Doc. 1 at ¶ 8; Doc. 7 at 9-10. Accordingly, Plaintiffs have not established deliberate indifference with respect to the CAA Defendants. *See Faircloth v. Marquez*, No. 12-CV-3317, 2016 WL 309047, at *3 (D. Colo. Jan. 26, 2016) ("It should go without saying that a prison official cannot be deliberately indifferent where he has no knowledge of, let alone control over, the prisoner's placement in allegedly threatening conditions."); *Hebert v. Raemisch*, No. 13-CV-0259, 2015 WL 9304634, at *15 (D. Colo. Dec. 22, 2015) (finding that plaintiff could not establish deliberate indifference with respect to defendant who did not have any authority to change challenged policies or procedures). Because I conclude that Plaintiffs have not alleged a violation of the Eighth Amendment, it is unnecessary to reach the parties' arguments regarding qualified immunity. *See* Doc. 14 at 9-10.

### 3. Wrongful Death Claim

Plaintiffs also bring a wrongful death claim under C.R.S. § 13-21-202 against CCA. Doc. 1 at ¶¶ 13-17. Because I have dismissed the § 1983 claim over which there is federal jurisdiction, I

will not exercise my discretion to consider Plaintiffs' wrongful death claim.  *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## Conclusion

For the reasons given above, Defendants' Motions to Dismiss (Docs. 7 & 14) are **GRANTED**.  This case is **DISMISSED**, with each side to bear its own fees and costs.


Dated:  March 31, 2016             *s/ John L. Kane*
                                   Senior U.S. District Judge